936 So.2d 292 (2006)
Monquita JOHNSON, Plaintiff-Appellant,
v.
CITY OF BASTROP, Defendant-Appellee.
No. 41,240-CA.
Court of Appeal of Louisiana, Second Circuit.
August 1, 2006.
*293 Anthony J. Bruscato, Monroe, for Appellant.
Robert M. Baldwin, Mark J. Neal, Monroe, Donald H. Zeigler, III, for Appellee.
Before WILLIAMS, DREW and MOORE, JJ.
WILLIAMS, Judge.
The plaintiffs, Monquita Johnson, La-Sandra Alford and Eric Avery, appeal a judgment in favor of the defendant, City of Bastrop ("the City"). The trial court found that the plaintiffs failed to show that the City was negligent. For the following reasons, we affirm.

FACTS
On the morning of January 28, 2004, Monquita Johnson was driving an automobile on Hood Street in Bastrop, Louisiana, when she observed a dislodged manhole cover in the road. Johnson attempted to avoid the manhole by turning, but the rear driver side tire went down into the hole, causing the vehicle to leave the roadway. The automobile, a 1998 Dodge Neon, was owned by Johnson's mother, LaSandra Alford, and was covered by an insurance policy issued by USAgencies. Johnson was an excluded driver under the policy.
Johnson next drove the vehicle approximately three to five blocks to her mother's house. As a result of the accident, the vehicle's tire rim was damaged and the tire was flattened. Johnson took photographs of the damaged tire and the manhole cover. Johnson and Alford then contacted the City and police to report the dislodged manhole cover. The City completed a "corrective maintenance work order" and sent a worker later that day to secure the manhole cover in place and seal it with tar to prevent the cover from becoming dislodged again.
After the accident and over the next several days, Johnson felt pain in her neck and back. Johnson stated that she did not go to the doctor at the time because she did not have sufficient funds or health insurance. In February 2004, Johnson began working with a janitorial service, where her job duties included mopping, vacuuming and emptying the trash. Johnson later testified that during the three months following the accident, she experienced recurring neck and back pain, which she treated with Tylenol and hot baths.
In April 2004, Johnson visited the family physician, Dr. Allen Spires, who diagnosed *294 her with cervical and lumbar sprain. Dr. Spires prescribed Skelaxin, Motrin and four sessions of physical therapy, which Johnson completed in May 2004. While working in June 2004, Johnson felt back pain after lifting a trash bag. Dr. Spires removed her from work for eleven days and then released her to return to her job. Johnson's condition improved over time, but she still felt occasional back pain at the time of trial. Johnson incurred $875 in total medical bills.
Subsequently, the plaintiffs, Monquita Johnson, her husband, Eric Avery and La-Sandra Alford, filed a petition seeking recovery for personal injury, loss of consortium and property damage. After a trial, the district court issued oral reasons, finding that the City was not liable for Johnson's injuries because it had not received actual or constructive notice of the dislodged manhole cover before the accident. The court further found that Alford was precluded from recovery for property damage because she gave Johnson permission to drive the vehicle even though she was an excluded driver under the insurance policy.
In addition, the court determined that Johnson and Alford could not recover for bodily injury or property damage of less than $10,000 because of their failure to maintain compulsory motor vehicle liability insurance under LSA-R.S. 32:866, the "no pay, no play" statute. The trial court rendered judgment in favor of the City, dismissing plaintiffs' claims. The plaintiffs appeal the judgment.

DISCUSSION
In two assignments of error, the plaintiffs contend the trial court erred in finding that the City was not negligent since it did not have notice of the loose manhole cover before the accident. Plaintiffs argue that although the City did not have notice that this particular manhole cover was dislodged, the City knew or should have known that this type of lightweight manhole cover was likely to become loose, creating a risk of injury to motorists.
No person shall have a cause of action against a public entity for damages caused by the condition of things within its care and custody unless such entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so. LSA-R.S. 9:2800. In order to recover against a public entity for damages due to road defects, the plaintiff must prove by a preponderance of evidence: (1) the thing that caused her damages was in the defendant's custody; (2) the thing was defective due to a condition that created an unreasonable risk of harm; (3) the defendant possessed actual or constructive notice of the defect, yet did not take corrective action within a reasonable period of time; and (4) the defect was a cause in fact of plaintiff's harm. Jones v. Hawkins, 98-1259 (La.3/19/99), 731 So.2d 216.
Under LSA-R.S. 9:2800, constructive notice is defined as the existence of facts which imply actual knowledge. This definition allows for the inference of actual knowledge to be drawn from the facts demonstrating that the defective condition had existed for such a period of time that it should have been discovered and repaired if the public entity had exercised reasonable care. Lutz v. City of Shreveport, 25,801 (La.App.2d Cir.5/4/94), 637 So.2d 636, writ denied, 94-1487 (La.9/23/94), 642 So.2d 1294. The district court's findings pursuant to LSA-R.S. 9:2800 are subject to manifest error review. Graves v. Page, 96-2201 (La.11/7/97), 703 So.2d 566; Johnson v. City of Winnfield, 37,939 (La.App.2d *295 Cir.12/10/03), 862 So.2d 433. The appellate court will review the entire record to determine whether the district court's findings were clearly wrong. Stobart v. State, 617 So.2d 880 (La.1993); Johnson, supra.
In the present case, Leonard Harris, a supervisor of the City's sewer department, testified there were approximately 3,000 manholes throughout Bastrop, including a number with older, lightweight (65-70 lbs.) covers and others with newer, heavier (250 lbs.) covers. Harris stated that the manhole cover involved in Johnson's accident weighed 65 to 70 pounds and had been installed in the 1950s. Harris testified that the City did not have a procedure for the periodic inspection of manhole covers and had not posted warning signs regarding the possibility of dislodged manhole covers.
Harris explained that manhole covers can become dislodged in several ways, such as when they are driven over by a large vehicle, when pushed out of place by the force of water flowing through sewers after a heavy rain, or when moved by individuals. Harris stated that the problem of manhole covers pushed up by rising water occurred in certain areas, not throughout the city, and that there was no record of any prior complaint regarding the particular manhole cover involved in the accident. Harris testified that since 1986, the City had been gradually replacing older, light-weight manhole covers with heavier ones.
Another city employee, Eric Harris, testified that he and four other workers in the sewer department responded to complaints about dislodged or broken manhole covers. He estimated that during the past three to four years, he had welded down or secured with tar approximately 20 to 40 loose manhole covers. Harris testified that he was the only welder and he did not know how many manhole covers had been sealed by the other workers.
The plaintiffs presented the testimony of Floyd Gadberry[1], a licensed civil engineer with experience in the design and installation of sewer mains in public streets and residential subdivisions. Gadberry testified that a dislodged manhole cover created a hazard because the tire of a vehicle passing over a loose cover could drop into the manhole, causing damage to the vehicle. Gadberry stated that he did not know what had caused the cover at issue to become dislodged. Gadberry acknowledged there was no information regarding the length of time that this manhole cover had been loose before Johnson's accident.
In their brief, the plaintiffs argue that the City had constructive notice that the manhole cover at issue was defective because other manhole covers throughout the city sewer system had become dislodged over a number of years prior to Johnson's accident. However, plaintiffs' argument is not supported by the applicable law, LSA-R.S. 9:2800, which expressly provides that a public entity will be liable for damages caused by things in its care only when it has actual or constructive notice of "the particular vice or defect" which caused the damage. Thus, the mere fact that a manhole cover was previously dislodged in another part of the city does not impute to the City knowledge that this particular manhole cover presented a dangerous condition.
Nor is plaintiffs' argument, that notice is presumed because the City created the unreasonably dangerous condition by placing *296 thousands of light-weight manhole covers throughout the public streets, supported by the cited case of Whatley v. City of Winnfield, 35,132 (La.App.2d Cir.12/5/01), 802 So.2d 983, writ denied, 02-0015 (La.3/22/02), 811 So.2d 939. In Whatley, the issue was whether there was evidence that the City of Winnfield had created a dangerous condition with respect to the specific water meter involved in the accident, not whether the municipality's placement of water meters was hazardous.
Here, the testimony of the city workers demonstrated that there had not been any prior complaints of dislodged manhole covers on Hood Street and that no workers had moved this particular cover. In addition, Johnson and Alford testified that they had never previously seen any uncovered manholes or dislodged manhole covers on Hood Street.
Based upon the evidence presented, the plaintiffs failed to establish that the City was notified of the dislodged manhole cover prior to the accident or that the dangerous condition had existed for such a period of time that the City would have discovered the hazard in the exercise of reasonable care. Consequently, we cannot say that the trial court was clearly wrong in finding that the City lacked actual or constructive notice of the dangerous condition prior to the accident and was not liable for the plaintiffs' damages. Thus, the assignments of error lack merit. In reaching this conclusion, we pretermit a discussion of the remaining assignment of error and do not address the applicability of LSA-R.S. 32:866 in this case.

CONCLUSION
For the foregoing reasons, the trial court's judgment is affirmed. Costs of this appeal are assessed to the appellants, Monquita Johnson, LaSandra Alford and Eric Avery.
AFFIRMED.
NOTES
[1] Although this witness was identified as Floyd Gadberry in the trial transcript, we note that his actual name is Foy Gadberry.