Judgment rendered November 20, 2019.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,142-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

NATHAN PUTMAN, PAMELA                    Plaintiffs-Appellees
PUTMAN, JIMMY PUTMAN,
AND KYLE JONES

versus

SCOTT DALTON COSTELLO                    Defendant-Appellant
AND SHELTER MUTUAL
INSURANCE COMPANY

* * * * *

Appealed from the
Fifth Judicial District Court for the
Parish of West Carroll, Louisiana
Trial Court No. 31,171

Honorable John Clay Hamilton, Judge

* * * * *

DAVID J. THOMAS                          Counsel for Appellant,
                                         Scott Dalton Costello


COOK, YANCEY, KING, & GALLOWAY           Counsel for Appellee,
By: Gregg A. Wilkes                      Shelter Mutual Insurance
    Jason B. Nichols                     Company
    David L. Wilkes


MICHAEL J. BREAUX                        Counsel for Appellees,
- and -                                  Nathan Putman and
FISHER INJURY LAWYERS                    Pamela Putman
By: Bryan D. Fisher
    Chris J. Day

* * * * *

Before MOORE, STEPHENS, and McCALLUM, JJ.

**STEPHENS, J.**

Scott Dalton Costello appeals a judgment by the Fifth Judicial District Court, West Carroll Parish, Louisiana, in favor of Nathan Putman, defendant-in-reconvention, granting his motion for summary judgment. For the following reasons, we affirm the trial court's judgment.

## FACTS

Scott Costello is the owner of Costello's Racing & Adapters, Inc., which performs restoration and modification of motor vehicles—commonly referred to in the industry as "restomod" work. A restomod of a vehicle involves taking an older model vehicle and giving it the amenities of a newer model vehicle, which might include faster and lighter engines, air-conditioning, and/or brakes. In that vein, Nathan Putman owned a 1955 Chevrolet Bel Air, which he took to Costello for a restomod seeking to acquire more horsepower for the vehicle.

As the final step of Costello's restomod work, the men transported the vehicle to Arkansas to be "dyno-tested"—a calibration of the engine and transmission to ensure the systems were working efficiently together. During the dyno-test, Costello determined the car had sufficient power and told Putman, "It's making an awful lot of power. I think we should quit here." According to Costello's deposition transcript, Putman responded, "Okay. I'm good with it." They took the car back to Costello's workshop for some additional fine-tuning. The record shows at that point and after test driving the vehicle several times, Costello became concerned the vehicle's engine was too powerful for the suspension and tires. He characterized the vehicle as "dangerous": upon acceleration, the vehicle would lose rear-wheel traction, causing a lack of control. Advising Putman there were control

issues with the car, he stated, "You better watch this car, it will get sideways at 70 mph," and Putman agreed to make a modification to the tire rims.

After Costello performed additional work on the vehicle, he called Putman to pick it up, and Costello suggested the men take a test drive together. Costello told Putman the vehicle was "ready," and with Costello at the wheel and Putman in the front passenger's seat (not wearing a seatbelt), the two men took to the road—La. Hwy. 585 in West Carroll Parish, Louisiana. Prior to that test drive, Costello had driven the vehicle only on an airstrip on his property. While on the test drive, Costello accelerated to a high rate of speed, the back wheels lost traction, and the vehicle spun out of control and crashed. Both men were thrown from the vehicle and severely injured.

Putman filed suit naming Costello and Shelter Mutual Insurance Company ("Shelter") as defendants, which claims are still pending. He claimed that his injuries were caused exclusively by the negligence and fault of Costello. Additionally, Pamela Putman was a named plaintiff, claiming loss of consortium, service, and society of her husband.[1]

In March 2018, Costello filed a reconventional demand against Putman and Shelter and alleged:

> [Costello] performed extensive work on the 1955 Chevy Bel Air, including but not limited to installing a 6.2 liter LS3 engine with an edlebrock super charger. [Costello] advised Mr. Putman that the car posed an unreasonable risk of danger, but Mr. Putman ignored [Costello]'s warning. Mr. Putman insisted on more power, despite [Costello]'s warnings.

---

[1] Originally, two additional plaintiffs were named, Jimmy Putman and Kyle Jones; however, by their own motion for dismissal, their claims were dismissed without prejudice in June 2017.

2

Costello further claimed that the resulting crash on March 15, 2017, was caused by the inherent danger posed by Putman's unreasonably dangerous vehicle.

Both Putman and Shelter filed motions for summary judgment. Putman submitted he met his burden of showing the absence of factual support for the elements to prove Costello's claim; therefore, in the absence of any genuine issues of material fact, he was entitled to summary judgment as a matter of law. Specifically, Putman argued that Costello, as the driver, had a duty to drive at a reasonable speed and not to lose control. Shelter maintained Costello was solely at fault for the accident, and Putman was not liable; thus, Shelter, as Putman's insurer, is not liable for his actions and was entitled to summary judgment as a matter of law. Both parties referred to Costello's deposition in support of their motions. Putman also relied upon an exhaustive and detailed list of statement of facts not genuinely disputed, supported by his and Costello's deposition transcripts.

After a hearing on and consideration of Putman's and Shelter's motions for summary judgment, the trial court granted the motions and entered judgment in favor of Putman and Shelter. This appeal by Costello ensued.[2]

**DISCUSSION**

Costello argues on appeal that the trial court erroneously granted the motions for summary judgment by Putman and Shelter. First, according to Costello, the trial court was called to determine whether Putman's car posed

---

[2] In Costello's motion for appeal, he cited the judgment only as it pertained to Putman; however, Shelter has filed a brief on appeal in support of the trial court's judgment. Our opinion will address the entirety of the trial court's judgment.

an unreasonable risk of danger, which he submits is a genuine issue of material fact precluding summary judgment. Costello points out he submitted three uncontroverted affidavits in support of his claims, including an expert affidavit. Second, Costello maintains that the trial court erred in inferring he used excessive acceleration. Finally, Costello argues there is a genuine issue of fact whether Putman insisted on more power for the vehicle, which had the result of making it uncontrollable on the road. We disagree.

Summary judgments are reviewed *de novo* on appeal, with the reviewing court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate, whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. La. C.C.P. art. 966; *Smith v. Robinson*, 2018-0728 (La. 12/5/18), 265 So. 3d 740; *Franklin v. Dick*, 51,479 (La. App. 2 Cir. 6/21/17), 224 So. 3d 1130. We view the record and all reasonable inferences to be drawn from it in the light most favorable to the nonmoving party. *Hines v. Garrett*, 2004-0806 (La. 6/25/04), 876 So. 2d 764. When considering a motion for summary judgment, it is improper to weigh the evidence or determine the truth of the matter; rather, the trial court is only to determine whether there is a genuine issue of fact for trial. *Franklin, supra*.

A genuine issue is one about which reasonable persons could disagree. *Hines, supra; Franklin, supra.* A material fact is one that potentially ensures or precludes recovery, affects the ultimate success of the litigant, or determines the outcome of the dispute. *Hines, supra; Franklin, supra.* Whether a fact is "material" for purposes of summary judgment is

4

determined in light of the substantive law applicable to the particular case. *Richard v. Hall*, 2003-1488 (La. 4/23/04), 874 So. 2d 131.

On a motion for summary judgment, the burden of proof remains with the movant. However, if the moving party will not bear the burden of proof on the issue at trial and points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense, then the nonmoving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the opponent of the motion fails to do so, there is no genuine issue of material fact and summary judgment will be granted. *See* La. C.C.P. art. 966(D)(1); *Bufkin v. Felipe's Louisiana, LLC*, 2014-0288 (La. 10/15/14), 171 So. 3d 851; *Kadlec v. Louisiana Tech Univ.*, 50,841 (La. App. 2 Cir. 11/16/16), 208 So. 3d 992, *writ denied*, 2017-0062 (La. 3/24/17), 216 So. 3d 815.

Louisiana courts have adopted a duty-risk analysis in determining whether liability exists under the facts of a particular case. Under this analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care; (2) the defendant failed to conform his or her conduct to the appropriate standard of care; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) actual damages. *Bufkin, supra* at 855; *Flipping v. JWH Properties, LLC*, 50,648 (La. App. 2 Cir. 6/8/16), 196 So. 3d 149, 156.

The threshold issue in any negligence action is whether the defendant owed the plaintiff a duty, and whether a duty is owed is a question of law.

5

*Bufkin, supra.* Generally, a driver has a duty to use reasonable care in the operation and control of his vehicle. *Brown v. Louisiana Indem. Co.*, 1997-1344 (La. 3/4/98), 707 So. 2d 1240; *Sullivan v. Murphy*, 37,473 (La. App. 2 Cir. 8/22/03), 852 So. 2d 1277, *writs denied*, 2003-2635, 2003-2650 (La. 12/12/03), 860 So. 2d 1158, 1160. Encompassed within the scope of this duty is the risk that guest passengers might be injured in an accident. *Brown, supra*; *Molbert v. Toepfer*, 550 So. 2d 183, 184 (La. 1989).

Initially, we note the obvious: Putman, a passenger in the vehicle he owned, was not operating and controlling the vehicle and clearly did not owe a duty to Costello, the driver. It is absolutely undisputed that Costello was operating the car when he lost control and wrecked it. Putnam was not in physical control of the vehicle, and Costello conceded that Putnam did not attempt to physically control the vehicle.

Further, Costello not only was operating the vehicle, but also had control due to his firsthand, mechanical knowledge of this souped-up vehicle on which he had worked. The record shows undeniably that Putman hired Costello to restore and modify his vehicle with the specific purpose of making it powerful. Significantly, Putman is not a mechanic, and he relied upon Costello's expertise in this area. Costello admitted no one knew the limitations and performance of the vehicle better than him, and he was the only person who could have prevented the accident. In fact, Costello admitted feeling uneasy about the vehicle's power. Because of Costello's expertise in general, as well as with this particular vehicle, he knew the power of the vehicle better than anyone, including Putman, a layman. The record shows Costello did not advise against the modifications that made the vehicle dangerously powerful—even with his alleged misgivings regarding

6

the engine's power. As a result of Costello's expertise and knowledge regarding this particular vehicle, Putman did not have a duty to protect Costello against his excessive acceleration during a test drive, which action was unforeseeable to Putman, but highly foreseeable to Costello.

Furthermore, there are no genuine issues of material fact in dispute regarding the cause of Costello's injuries or that Putman's vehicle posed an unreasonable risk of harm to Costello. The depositions of Costello and Putman do not provide sufficient factual support sufficient to establish Costello would meet his burden of proof at trial. Moreover, the supporting affidavits submitted by Costello in opposition to the motions for summary judgment contain merely conclusory allegations of fact which are devoid of specific facts; they are not sufficient to defeat summary judgment. *See, Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc*., 2009-1633 (La. 4/23/10), 35 So. 3d 1053.

Here, the record shows, as reflected in the deposition transcripts, that Costello test drove the vehicle two or three times on the private air strip, and, significantly, he was aware that the rear wheels would lose traction upon acceleration. On the day of the accident, Costello told Putman the vehicle was "ready," and Costello suggested a test drive on the open road— not the private air strip. Costello noted in his deposition that the airstrip was "dry and clean," evidently making it less slick than an open roadway, which is a "much slicker surface." When asked in his deposition why he chose to test drive the vehicle on the open road, knowing the dangerous nature of the vehicle, Costello responded, "You know, we all take risk[s] in life, and you know, I guess we all kind of think we're bullet proof at times and can handle

7

whatever is thrown at us[.]" Costello also admitted there was no reason why he could not have test driven the vehicle on the airstrip.

Whereas Costello argues Putman's vehicle in question posed an unreasonable risk of harm to Costello, we disagree—primarily because the facts show that the degree to which any danger posed by the vehicle was evident to Costello, the potential victim. In other words, the substantial factor or cause of Costello's harm was not Putman's vehicle, which Costello characterizes as unreasonably dangerous, but instead was Costello's decision to test drive the vehicle on the open road and to accelerate excessively, despite his knowledge of the vehicle's mechanical propensities. Costello was the cause of his injury, not the unreasonable risk of harm of Putman's vehicle. In hindsight, Costello may not have driven the vehicle in that manner on that roadway, but at the time and knowing the vehicle's propensities, he chose to drive and to accelerate at a great speed on the open roadway. This is clearly demonstrated, without dispute, by the facts contained in the record.

Considering that Costello failed to demonstrate he would be able to bear his burden at trial proving a duty was owed by Putman, summary judgment was properly granted in favor of Putman and Shelter. Furthermore, Putman met his burden of producing evidence to point out the lack of factual support for an essential element in Costello's case—the allegation that Putman's vehicle posed an unreasonable risk of harm and caused Costello's injuries. Costello failed to meet his burden, and the motions for summary judgment were well founded and well supported by the law and the facts. Thus, the trial court's judgment was not in error.

## CONCLUSION

For the stated reasons, the judgment sustaining the motions for summary judgment in favor of Nathan Putman and Shelter Mutual Insurance Company is affirmed.  All costs of this appeal are assessed to Scott Dalton Costello.

**AFFIRMED.**