Judgment rendered August 28, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,801-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

LEIGHNAE H. POOLE AND      Plaintiffs-Appellants
JIMMY G. POOLE

versus

BROOKSHIRE GROCERY      Defendant-Appellee
COMPANY

* * * * *

Appealed from the
Fifth Judicial District Court for the
Parish of Richland, Louisiana
Trial Court No. 46,357

Honorable Will Barham, Judge

* * * * *

LAW OFFICE OF TRACY HOUCK, LLC      Counsel for Appellants
By: Tracy W. Houck

SMITH LAW OFFICES
By: Michael R. Smith

NELSON, ZENTNER, SARTOR &      Counsel for Appellee
SNELLINGS
By: F. Williams Sartor, Jr.
    Douglas R. Nielsen

* * * * *

Before PITMAN, STEPHENS, and ELLENDER, JJ.

**STEPHENS, J.**

This appeal arises from the Fifth Judicial District Court, Parish of Richland, the Honorable Will R. Barham, Judge, presiding. The district court rendered summary judgment in favor of the defendant, Brookshire Grocery Company ("Brookshire Grocery"), and dismissed with prejudice the claims of the plaintiff, Leighnae Poole ("Ms. Poole"). On appeal, Ms. Poole urges that summary judgment was improperly granted as genuine issues of material fact exist regarding the condition of the Brookshire Grocery parking lot in which she fell and sustained injuries. For the following reasons, we reverse the judgment of the trial court and remand.

## FACTS AND PROCEDURAL HISTORY

On September 17, 2017, Ms. Poole went to shop for groceries at Brookshire Grocery in Rayville, Louisiana. After purchasing her groceries, Ms. Poole walked out of the store and toward her vehicle in the parking lot. On the way to her vehicle, Ms. Poole tripped and fell to the ground, sustaining injuries to her hand, knee, neck, and chest. According to Ms. Poole, her fall was caused by a crater or pothole in the parking lot. At the time of her fall, Ms. Poole was carrying four to five bags of groceries and looking straight ahead at her vehicle, not down at the ground where she was walking.

On April 6, 2018, Ms. Poole filed a petition for damages in which she alleged that her fall and subsequent injuries were caused by Brookshire Grocery's negligence in keeping and maintaining the premises in a safe

condition.[1]  Ms. Poole's husband, Jimmy Poole, alleged that he suffered damages in the form of loss of consortium.[2]  On January 11, 2023, Brookshire Grocery filed a motion for summary judgment, alleging that it had no duty to protect Ms. Poole from that which was obvious and apparent. The trial court held a hearing on the motion for summary judgment on August 21, 2023.

At the hearing, Brookshire Grocery first objected to the affidavit from Phillip Beard and requested the exclusion of his expert report from the record.  Brookshire Grocery argued that the report contained an analysis of a spot that Ms. Poole testified did not cause her fall.  Brookshire Grocery also suggested that there were discrepancies in the report pertaining to meetings that took place between Mr. Beard and Steven Randall, an investigator hired to take pictures of the parking lot.  These discrepancies led Brookshire Grocery to argue that some of the facts relied on by Mr. Beard were inaccurate, ultimately making the report unreliable.  The trial court, however, overruled Brookshire Grocery's objection to the report and stated that its concerns about the report would go to the weight rather than the admissibility of the report.  As a result, the trial court declined to exclude Mr. Beard's report.

As to the motion for summary judgment, Brookshire Grocery argued that the hole was open and obvious such that Ms. Poole should have seen the hole and avoided it.  In return, Ms. Poole suggested that Brookshire Grocery admitted the parking lot was in such ruin that the hazardous condition was

---

[1] According to her deposition, Ms. Poole alleged that the fall caused her right breast implant to rupture.  This resulted in a noticeable difference between her left and right breasts.

[2] Mr. Poole passed away on November 11, 2020.

open and obvious, but this does not negate the duty Brookshire Grocery owed to her to protect her from an unreasonably dangerous condition. The trial court opined that the more obvious the risk, the less likely it is to cause injury because it will be avoided. In this instance, the trial court noted that the hole was by the entrance, and the pictures in the record showed a vehicle parked by the hole. Similarly, the court also stated that the hole can be clearly seen through the no parking zone.

In its reasoning, the trial court noted that the plaintiffs are from Richland Parish and would likely be familiar with the parking lot given the small number of grocery stores located in Rayville. Likewise, the court stated, "I cannot help but observe the times that I go – or the court goes – to Brookshires…" The trial court opined that Ms. Poole would have been looking back and forth for oncoming traffic, trying to find her car, and concerned for her safety while walking through the parking lot. However, the trial court concluded that the hole was "very open and obvious" from the pictures as well as from the myriad of holes in the rest of the parking lot. As a result, the court granted Brookshire Grocery's motion for summary judgment. Ms. Poole now appeals.

**DISCUSSION**

Ms. Poole asserts three assignments of error. First, Ms. Poole argues that the trial court erred in failing to use the correct standard for summary judgment. In her second assignment of error, Ms. Poole urges that the trial court assumed facts not in the record. Lastly, Ms. Poole contends that the trial court misinterpreted the Supreme Court's decision in *Farrell v. Circle K Stores, Inc.*, 22-00849 (La. 3/17/23), 359 So. 3d 467. In response, Brookshire Grocery argues that it did not breach any duty owed to Ms. Poole

because the hole in the parking lot was open and obvious to all who encountered it such that a reasonable person would have seen the hole and avoided it. Brookshire Grocery suggests that the trial court correctly concluded that summary judgment was appropriate because reasonable minds could only agree that the condition was not unreasonably dangerous.

Appellate courts review motions for summary judgment *de novo*, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Leisure Recreation & Ent., Inc. v. First Guaranty Bank*, 21-00838 (La. 3/25/22), 339 So. 3d 508; *Peironnet v. Matador Res. Co.*, 12-2292 (La. 6/28/13), 144 So. 3d 791; *Elliott v. Continental Cas. Co.*, 06-1505 (La. 2/22/07), 949 So. 2d 1247; *Reynolds v. Select Props., Ltd.*, 93-1480 (La. 4/11/94), 634 So. 2d 1180; *Davis v. Whitaker*, 53,850 (La. App. 2 Cir. 4/28/21), 315 So. 3d 979.

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So. 2d 880; *Driver Pipeline Co. v. Cadeville Gas Storage, LLC*, 49,375 (La. App. 2 Cir. 10/1/14), 150 So. 3d 492, *writ denied*, 14-2304 (La. 1/23/15), 159 So. 3d 1058. Summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by La. C.C.P. art. 966(A)(2). The procedure is favored and shall be construed to accomplish those ends. *Id.*

A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue as to material fact, and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). If the mover will not bear the burden of proof at

4

trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. La. C.C.P. art. 966(D)(1). The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. *Id.*

A genuine issue is one about which reasonable persons could disagree. *Suire v. Lafayette City-Parish Consol. Gov't*, 04-1459 (La. 4/12/05), 907 So. 2d 37, *citing Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512 (La. 7/5/94), 639 So. 2d 730; *Franklin v. Dick*, 51,479 (La. App. 2 Cir. 6/21/17), 224 So. 3d 1130. In determining whether an issue is genuine, a court should not consider the merits, make credibility determinations, evaluate testimony, or weigh evidence. *Suire*, *supra*; *Chanler v. Jamestown Ins. Co.*, 51,320 (La. App. 2 Cir. 5/17/17), 223 So. 3d 614, *writ denied*, 17-01251 (La. 10/27/17), 228 So. 3d 1230.

A material fact is one that potentially ensures or precludes recovery, affects the ultimate success of the litigant, or determines the outcome of the dispute. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material for summary judgment purposes can be seen only in light of the substantive law applicable to the case. *Jackson v. City of New Orleans*, 12-2742 (La. 1/28/14), 144 So. 3d 876; *Richard v. Hall*, 03-1488 (La. 4/23/04), 874 So. 2d 131.

5

The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. La. C.C. art. 2317.1.

To determine whether liability exists under Article 2317.1, courts use a duty-risk analysis, under which the plaintiff must prove five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of duty element); and (5) proof of actual damages (the damages element). *Wheat v. State Farm Fire & Cas. Co.*, 55,712, p. 3 (La. App. 2 Cir. 7/17/24), 2024 WL 3434526 **4-5, *citing Farrell, supra.* Failure to prove any one of these elements by a preponderance of the evidence is fatal to the plaintiff's claim. *Id.*

Whether there was a breach of the duty owed is a question of fact or a mixed question of law and fact. *Farrell*, *supra*; *Boykin v. Louisiana Transit Co., Inc.*, 96-1932 (La. 3/4/98), 707 So. 2d 1225. Louisiana courts apply the risk/utility balancing test to make this determination. *Farrell*, *supra*; *Bufkin v. Felipe's Louisiana, LLC*, 14-0288 (La. 10/15/14), 171 So. 3d 851. The Supreme Court synthesized the risk/utility balancing test to a consideration of four pertinent factors: (1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, including the obviousness and

apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in terms of social utility or whether the activities were dangerous by nature. *Id.*

The Supreme Court in *Farrell* clarified that whether a condition is open and obvious is embraced within the breach of the duty element of the duty/risk analysis and is not a jurisprudential doctrine barring recovery but only a factor of the risk/utility balancing test. *Farrell*, 22-00849, p. 12, 707 So. 2d at 478. After applying the risk/utility balancing test and a determination is made that the complained of hazard is not an unreasonably dangerous condition, a defendant is not liable because there was not a duty breached. *Farrell, supra.* Although the breach of the duty element involves a mixed question of law and fact, summary judgment is not necessarily precluded. *Id.* Summary judgment, based on the absence of liability, may be granted upon a finding that reasonable minds could only agree that the condition was not unreasonably dangerous; therefore, the defendant did not breach the duty owed. *Id.* In such an instance, the plaintiff would be unable to prove the breach element at trial. *Id.*

In applying the law to the facts before us, we first note that Brookshire Grocery owed a duty to Ms. Poole under La. C.C. art. 2317.1. Since Brookshire Grocery owed this duty to Ms. Poole, the next inquiry is whether Brookshire Grocery, in its motion for summary judgment, pointed out to the court the absence of factual support for the breach of the duty element. If Brookshire Grocery satisfied this burden, Ms. Poole then needed to produce factual support sufficient to establish the existence of a genuine issue of material fact. On *de novo* review and after applying the risk/utility balancing test of *Farrell, supra,* we conclude that genuine issues of material

7

fact exist and reasonable minds could differ in a determination that the condition was not unreasonably dangerous.

*Utility of Complained of Condition*:

The first factor in the balancing test is the utility of the complained-of condition. If the alleged defect was meant to be there, it often will have social utility and, in the balancing test, is weighed against a finding that the premises were unsafe. *Farrell*, *supra*. According to the evidence in the record, the deterioration of the parking lot was not intended nor do we find any utility to the conditions of the parking lot at the time of Ms. Poole's fall.

*Likelihood and Magnitude of Harm/Obviousness and Apparentness of Condition*:

The likelihood of the harm asks the degree to which the condition will likely cause harm. If it is likely to cause harm, this weighs in favor of finding it unreasonably dangerous. If it is unlikely to cause harm, this weighs in favor of it not being unreasonably dangerous. The magnitude of the harm asks whether the condition presents a risk of great or small injury and the likelihood of each. The likelihood and magnitude of the harm factor includes a consideration of the open and obviousness of the condition. *Farrell*, *supra*. The size of and the location of the alleged unreasonably dangerous condition are relevant in assessing the openness and obviousness of the condition. *Id*.

In its arguments, Brookshire Grocery urged that the hole in the parking lot was avoidable, explaining that the pictures in the record indicated area the size of almost two parking spaces Ms. Poole could have used rather than taking the path through the hole on the way to her vehicle. Since Ms. Poole was on her way out of the store, she would have seen the

condition of the parking lot on her way into the store; Ms. Poole stated in her deposition that she had been to the store a few times before, so she was familiar with the parking lot. Brookshire Grocery also suggested that Ms. Poole carrying her groceries to her vehicle was not an inherently dangerous activity because a reasonable person would be looking down and around their feet to see where they are going to avoid holes instead of looking straight ahead at her vehicle.

In response, Ms. Poole argued that the pictures in the record show many defects in the parking lot. She also argued that when exiting the store and carrying bags, many people are looking at their surroundings, making sure "no bad guys" are around and being sure to avoid traffic. Ms. Poole exited the store and headed straight to her vehicle in an area Brookshire Grocery intended for patrons to park, and she maintained that the hole was in her walking path to get to and from the front doors of the grocery store. Also, in support of her position, Ms. Poole submitted the report from Mr. Beard, who has previously been designated as an expert for similar cases, and whose report concluded that Ms. Poole's fall resulted from Brookshire Grocery's failure to cure a defective and hazardous condition.

After reviewing the arguments from both parties and the trial court's reasoning for granting Brookshire Grocery's motion for summary judgment, we are constrained to find that reasonable minds could differ in a determination as to whether the condition was unreasonably dangerous. Could Ms. Poole see the hole she stepped in while she was carrying groceries? Could she avoid the hole by walking around it? Would she have tripped on another hole trying to avoid this particular hole on the way to her vehicle? These are genuine issues of material fact in dispute and ones that

can only be resolved by a trier of fact after trial, not on a motion for summary judgment. According to the facts of this case, we cannot say that the likelihood and magnitude of the harm caused by the conditions of the parking lot would be minimal. Making a conclusion on this factor in this case requires considering the merits of the case, making credibility determinations, and weighing the evidence, all of which are improper considerations on a motion for summary judgment.

*Cost of Preventing Harm/Nature of Plaintiff's Activities*:

The last factors to consider in the risk/utility balancing test are the cost of preventing the harm and the nature of the plaintiff's activities in terms of social utility or whether the activities were dangerous by nature. While there is discussion in the record of the cost of preventing the harm and that Brookshire Grocery actually repaired the parking lot shortly after Ms. Poole's incident, there is no concrete evidence in the record about the cost of preventing the harm. As to Ms. Poole's activity, she carried her groceries and walked toward her vehicle in the parking lot. This is not an activity that is dangerous in nature and does not weigh heavily in a determination of an unreasonably dangerous condition.

Given the reasons above and after applying the risk/utility balancing test, we find that the trial court erred in granting Brookshire Grocery's motion for summary judgment. Similarly, we agree with Ms. Poole's contentions that the trial court erred in assuming facts not in the record and by misinterpreting the *Farrell* decision. The *Farrell* decision clearly establishes that whether the plaintiff has knowledge of the condition is irrelevant in determining whether the thing is defective; therefore, Ms. Poole's awareness of the condition of the parking lot because she is a

10

resident of Richland Parish and because she shopped at the store on previous occasions is irrelevant to Brookshire Grocery's entitlement to summary judgment. After Brookshire Grocery pointed out the absence of factual support for the breach element, Ms. Poole satisfied her burden and produced factual support sufficient to establish the existence of genuine issues of material fact as to the conditions of the parking lot. These fact issues could result in a reasonable juror concluding that the condition of the parking lot was unreasonably dangerous.

## CONCLUSION

For the reasons expressed herein, the judgment of the trial court granting summary judgment in favor of the defendant, Brookshire Grocery, is reversed, and the matter is remanded for further proceedings on the merits. Costs of this appeal are assessed to Brookshire Grocery.

**REVERSED AND REMANDED.**